**In re LIONS FARMS, INC., Debtor.**

**Larry E. SCHNEIDER,
Trustee, Plaintiff,**

**v.**

**CAPROCK INDUSTRIES, INC.; Harold Priddy; Jack L. Gorsuch; Wayne Smith; Wendell C. Smith; Danny Ridder; Fidelity State Bank of Garden City, Inc.; Farm Bureau Mutual Insurance Co., Defendants.**

**Bankruptcy No. 83–40599.
Adv. No. 84–0081.**

United States Bankruptcy Court,
D. Kansas.

Aug. 19, 1985.

Larry E. Schneider, Topeka, Kan., trustee, pro se.

Roger K. Viola, Stumbo & Stumbo, Topeka, Kan., for Fidelity State Bank of Garden City, Inc.

Eric W. Severson, Irwin, Clutter & Severson, Topeka, Kan., for debtor.

Ben Hartloff, Leoti, Kan., for Harold Priddy and Danny Ridder.

Glendon E. Rewerts, Leoti, Kan., for Wendell C. Smith and Jack L. Gorsuch.

Robert J. Schmisseur, Hampton, Hampton, Schmisseur, Johnston & Eisenhauer, Pratt, Kan., for Caprock Industries, Inc.

Edward F. Horne Manhattan, Kan., for Farm Bureau Mut. Ins. Co.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter comes before the Court on the trustee's complaint to determine ownership of the proceeds of certain crops grown on a particular section of land in Wichita County, Kansas and ownership of entitlements received by the debtor as a result of the 1983 payment-in-kind (PIK) program. Appearances are as follows: the trustee, Larry E. Schneider, Topeka, *pro se;* Roger K. Viola, Stumbo, Stumbo & Viola, Topeka, for Fidelity State Bank of Garden City, Inc.; Eric W. Severson of Irwin, Clutter & Severson, Topeka, for the debtor; Ben Hartloff, Leoti, for Harold Priddy and Dan-

ny Ridder; Glendon Rewerts, Leoti, for Wendell C. Smith and Jack L. Gorsuch; Robert J. Schmisseur of Hampton, Hampton, Schmisseur, Johnston & Eisenhauer, Pratt, for Caprock Industries, Inc.; and Edward F. Horne, Manhattan, for Farm Bureau Mutual Insurance Co., Inc.

## FINDINGS OF FACT

The facts necessary to the resolution of this case are not in dispute. The security agreement between the Fidelity State Bank and the debtor covers crops grown on section 25, township 16, in range 37 (25–16–37) while the financing statement, because of an apparent clerical error, refers to section 25 of township 16 in range *36* (25–26–36). This land is leased by the debtor and the landowner's name does not appear on the financing statement. Both documents cover contract rights, but not general intangibles.

## CONCLUSIONS OF LAW

The trustee disputes the perfection of the bank's security interest in crops growing on land described as 25–16–37 in Wichita County, Kansas, because the financing statement does not contain a description of that parcel of land. The bank apparently concedes that if perfection is in fact defective, then the trustee can avoid the security interest pursuant to 11 U.S.C. § 545.

The description in the financing statement differs from the security agreement by one digit in the range number. The parcel described in the financing statement is approximately six miles due east of the one described in the security agreement. The trustee argues that the description in the financing statement is insufficient to impart notice to a lien creditor without knowledge, such as a trustee under 11 U.S.C. § 544(a). The Court agrees.

Kansas Statutes Annotated § 84–9–402(1) requires that a financing statement covering growing crops contain a description of the land upon which the crops are growing. Although the description need not be a precise legal description, it must reasonably identify the land in question. K.S.A. § 84–9–110.

This Court has held that a description is sufficient if it contains the name of the landowner, the approximate number of acres of the farm, the county and the approximate distance and direction of the farm from the nearest town. *In Re Roberts,* 38 B.R. 128, (Bankr.D.Kan.1984); cited with approval in B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 8.5[1][a] at n. 137.8 (Supp.1985 No. 1); *In Re McMannis,* 39 B.R. 98 (Bankr.D.Kan.1983).

In *Chanute Production Credit Assn. v. Weir Grain & Supply, Inc.,* 210 Kan. 181, 499 P.2d 517, 10 U.C.C. Rep. 1351 (1972), the Kansas Supreme Court held insufficient a financing statement describing the crops and land on which the crops were grown as: "Annual and perennial crops of whatever kind and description which are now growing or are hereafter planted, grown, and produced on land owned or leased by the debtor by Cherokee County, Kansas." In so holding, the court said that a purchaser or creditor "should not be required to make a general search of the record or a general inquiry in the county as to lands leased by the debtor." 210 Kan. 182, 499 P.2d 517.

A case similar, but not identical, to this case is *First National Bank of Creston v. Francis,* 342 N.W.2d 468, 37 U.C.C. Rep. 1400 (Iowa 1984). In that case both the security agreement and the financing statement misdescribed the land as section 24, township 71 north, range 32, when the correct description would have been section *25,* township 71 north, range 32. The Iowa Supreme Court, by a narrow majority, conceded that under UCC § 9–402(8), which Iowa has adopted, a land description in a financing statement may contain minor errors which are not seriously misleading, but found the description before it seriously misleading. The Court stated, "Nothing in the bank's description would have caused [a] person checking the record to suspect the section number was wrong or that the bank intended to encumber crops

on other land.... When as here, nothing in the instrument itself indicates or directs that further inquiry should be made concerning the location of the secured crops, [a] third person need not make further inquiry." The majority opinion went on to observe that this is different from an erroneous serial number in a description of personal property, which would not defeat a security interest because "from the entire description the secured property could reasonably be identified." 37 U.C.C. Rep. at 1403–04. Where only a legal description of land is given, on the other hand, there is no other information contained in the "entire description" which might mitigate a clerical error in the legal description.

The dissent in *Creston* argued that upon finding that the debtor had *some* encumbered grain, a creditor searching the records is required to inquire to find out exactly what crops were encumbered. This interpretation is flawed because if it were the intent of the legislature to require such general inquiry, then there would have been no need to require any land description at all; simply filing as to "crops" would put a purchaser or creditor on the same degree of notice that the dissent in *Creston* argues is sufficient. Furthermore, this view is not sustainable in Kansas because the Kansas Supreme Court in *Chanute P.C.A.* specifically rejected the notion that a purchaser or subsequent creditor must make a general inquiry.

A noted treatise writer, in disagreeing with the dissent in *Creston*, states, "A third party could indeed be misled by an erroneous figure in a real estate description. If the secured lender wants to avoid the mistake trap, it can describe the real estate in a more general way, such as 'the Jones farm three miles northwest of Canton.'" B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, § 8.5[1][a] (Supp.1985 No. 1). In short, in Kansas if the secured party uses a general description as suggested by Professor Clark, further inquiry by a third party is required to ascertain the exact location of the property secured. If on the other hand the secured party chooses to rely solely upon a specific legal description in its financing statement, it bears the burden of ensuring that no seriously misleading clerical error appears as no inquiry beyond the financing statement is necessitated because of its specificity.

The land description in the financing statement in this case is therefore found to be insufficient. The Bank's security interest is unperfected and the trustee may avoid the lien of the Fidelity State Bank on the proceeds of crops grown on section 25–16–37.

The second question in this case is whether the Bank has a perfected security interest in the 1983 PIK proceeds. The Bank's financing statement mentions proceeds of crops and contract rights. The parties agree that any PIK payments to which the debtor may be entitled due to abandonment of a planted crop or low yield, disaster, or subsidy payments to supplement a planted crop are properly perfected as proceeds of crops under *In Re Kruse*, 35 B.R. 958 (Bankr.D.Kan.1983). The dispute concerns any PIK entitlements in which the debtor has an interest due to an agreement not to plant certain acreage. The trustee argues that such entitlements are general intangibles, instead of contract rights and that therefore the bank is not properly perfected.

The current version of K.S.A. § 84–9–106 defines "general intangibles" as excluding "accounts." The 1983 Kansas comment to this section states, and the trustee concedes, that "contract rights" are contained within the definition of "accounts." The trustee is correct, therefore, in stating that collateral may be either general intangibles or contract rights, but not both.

█ The Court does not agree, however, with the trustee's contention that PIK payments are general intangibles and not contract rights. Diversion payments under the PIK program are in the nature of rights under an executory contract. See *Matter of Sunberg*, 35 B.R. 777 (Bankr. S.D. Iowa 1983). The farmer must perform and the government must pay. The

performance required of the farmer according to the contract includes leaving the diverted acres unplanted, using good soil conservation techniques, keeping weeds under control, and where prudent and economical, planting a ground cover that cannot be grazed or harvested during the six month growing season. PIK entitlements therefore fall within the definition of "account" as a "right to payment for ... services rendered" under K.S.A. § 84–9–106 and the 1983 Kansas comment to the section. The farmer's diversion agreement with the government is a contract and the PIK payments yet unpaid are contract rights which fall under the label of accounts. Thus under the mutually exclusive definitions of § 84–9–106 PIK diversion entitlements cannot be described as general intangibles. In so holding today, the Court specifically clarifies its previous decision in *In Re Kruse*, 35 B.R. 958, insofar as it suggested that PIK entitlements can be either general intangibles or contract rights.

The Bank's security interest in contract rights is properly perfected, and the trustee cannot avoid its lien in the PIK entitlements.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.