**In the Matter of. AZALEA FARMS, INC., Debtor(s).**

**TAMBAY TRUSTEE, INC., Plaintiff,**

**v.**

**AGRICULTURAL ASSET MANAGEMENT COMPANY, INC., Defendant.**

**Bankruptcy No. 83–2182.**
**Adv. No. 86–330.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 12, 1986.

Stephen L. Meininger, Tampa, Fla., for plaintiff.

Robert J. Nader, Tampa, Fla., for defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 7 adversary proceeding is a Motion for Summary Judgment filed by Tambay Trustee, Inc., (Trustee) on its Complaint to Determine Extent and Validity of Liens claimed by Agricultural Asset Management Company, Inc., (AG Asset),

---

**4.** Counsel for the plaintiffs estimates the arrearages at $6,400 as of the date of the hearing.

the Defendant, on properties of the estate. The Trustee maintains there are no genuine issues of material fact and that the Trustee is entitled to a judgment as a matter of law. The facts relevant and germane to a resolution of this controversy are as follows:

Azalea Farms, Inc. (Debtor) executed a Dairy Cow Lease with AG Asset on December 8, 1981. The security interest of AG Asset was perfected by filing two (2) UCC Financing Statements (UCC–1) in January 1982. The first UCC–1 perfected AG Asset's security interest in the following described collateral:

All of the Debtor's cattle numbered 1 through 14 whether now owned or hereafter acquired together with all replacements therefrom, whether by natural increase or otherwise, and all progeny of the aforesaid.

The second UCC–1 perfected AG Asset's security interest in the following described collateral:

All of the Debtor's tangible and intangible personal property, whether now owned or hereafter acquired including specifically, but not limited to, all livestock, machinery, equipment, tools, inventory, contract rights and accounts receivable.

On August 31, 1983, a second Dairy Cow Lease was executed between the Debtor and AG Asset. The security interest of AG Asset was perfected again by filing UCC–1 forms on September 19, 1983. One UCC–1 perfected AG Asset's security interest in the following described collateral:

All of the Secured Parties' cattle numbered 461N through 570N, and 751P through 850P, on Debtor's premises or in his care, pursuant to a certain Dairy Cow Lease between the parties, a copy of which may be obtained from the secured party.

The second UCC–1 filed by AG Asset contained identical language as that contained in the second UCC–1 filed in January 1982, which is set forth above. On November 4, 1983, the Debtor filed bankruptcy under Chapter 11 of the Bankruptcy Code. On October 18, 1984, the Chapter 11 proceeding was converted to a Chapter 7 liquidation case.

Pursuant to Congressional authorization, the Secretary of Agriculture established a "Milk Diversion Program". Under the program participating dairy farmers were entitled to receive payments from the Government for reducing their milk production and ultimately eliminating the entire dairy herd. The program commenced on January 1, 1984, and expired on March 31, 1985, after the commencement of this Chapter 7 case. The Debtor participated in the program and was paid for its participation on December 1985, and the funds received by the Debtor were turned over to the Trustee who now has the funds.

■ The dispute between the Trustee and AG Asset centers on whether or not AG Asset has a security interest in the payment received by the Debtor under the Milk Diversion Program. The right of AG Asset to the funds held by the Trustee depends on the resolution of two issues in favor of AG Asset. Thus, before AG Asset can prevail, it must first establish based on the undisputed facts that it did affectively acquire a security interest in the proceeds of the Milk Diversion Program and second whether Federal Regulations prevent AG Asset from obtaining a security interest in the funds paid to the Debtor to begin with.

Considering these issues seriatim, the threshhold question is whether or not the security interest created by the security agreement gave AG Asset by its terms and as a matter of law a security interest in the milk diversion payment received by the Debtor from the Government. In support of its claim, AG Asset asserts that the milk diversion payment is nothing more than a substitute for the milk the cows would have produced but for the Milk Diversion Program, therefore, AG Asset is entitled to the milk diversion payment as "proceeds" or a substitute of its collateral.

AG Asset cites the following cases in support of its position. *In re Sunberg*, 729 F.2d 561 (8th Cir.1984); *Osteroos v. North-*

west Bank Minot, N.A., 604 F.Supp. 848 (D.N.D.1984); *In re Hollie*, 42 B.R. 111 (Bankr.M.D.Ga.1984). However, a careful analysis of these cases shows that they fail to support the position of AG Asset, these cases are distinguishable from the facts involved in this case, and therefore, are not persuasive. For instance, in *Sunberg, supra*, the debtors' Security Agreement with the PCA by its terms granted PCA a security interest in all contract rights, accounts, and in general intangibles. The issue involved in this case was whether or not PIK contracts were proper collateral to secure PCA's loans as a matter of state commercial law. The question was answered by the Eighth Circuit in the affirmative. *Sunberg, supra*, however, did not answer the question of whether or not AG Asset in this case has a security interest in the milk diversion payment. *Osteroos, supra*, dealt with a corn diversion program, not milk diversion payments. The *Hollie* case is the only one which concerns milk diversion payments and it is distinguishable because the security agreement language was much broader than in the instant case. In the present instance there is nothing in the security agreement which covers this milk diversion payment even indirectly. Based on these facts, this Court is satisfied that AG Asset's security interest does *not* extend to the milk diversion payment. *See In re Bechtold*, 54 B.R. 318 (Bankr.D.Mn. 1985); *In re Frasch*, 53 B.R. 89 (Bankr.D.S. D.1985).

Even assuming without conceding that if the security agreement by its terms could somehow be construed to include the milk diversion payment, the interest created would not attach to the milk diversion payment as a matter of federal law. This is so because included in the Debtor's contract with the Commodity Credit Corporation (Milk Diversion Program contract) Paragraph 15, Assignment of Payment, provides as follows:

Payments which are earned by a producer may be assigned in accordance with the provisions of 7 CFR Part 709.

Section 7093 of 7 CFR provides in pertinent part:

A payment which may be made to a producer under any program to which this part is applicable may be assigned only as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice, for the current crop year. *No assignment may be made to secure or pay any preexisting indebtedness of any nature whatsoever.* (emphasis added).

The regulations, taken as a whole, clearly indicate that the Secretary of Agriculture in adopting the regulations intended that milk diversion payments be free of claims and therefore provide cash to farmers in order to finance farm operations. *See Bechtold, supra*, 54 B.R. at 321.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by the Trustee be, and the same is hereby, granted. A separate final judgment will be entered in accordance with the foregoing.