**In re Dannell Joe GEORGE, Bernita Mae George, Debtors.**

**In re Clarence Leroy BRADFORD, Barbara Joyce Bradford, Debtors.**

**In re Joseph Carl FEIST, Anna Madgelan Feist, Debtors.**

**Nos. 88–1164–C, 88–1155–C and 88–1156–C.**

United States District Court, D. Kansas.

Sept. 13, 1990.

---

David G. Arst, Wichita, Kan., for plaintiff in 88–1164–C.

Eric D. Bruce, Bruce & Davis, Wichita, Kan., for Santa Fe Trail Credit Union and First State Bank & Trust Co. of Larned.

Anne L. Baker, John D. Ensley, Charles N. Henson, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for Kansas Bankers Ass'n.

Lynn D. Allison, Wichita, Kan., Trustee in 88–1164–C.

Dan W. Forker, Jr., Hutchinson, Kan., for plaintiff in 88–1155–C.

James D. Holt, Eric D. Bruce, Bruce & Davis, Wichita, Kan., for John and Mable Bauer and 1st State Bank & Trust Co. of Larned.

Martin R. Ufford, Redmond, Redmond & Nazar, Wichita, Kan., Trustee in 88–1155–C.

Anne L. Baker, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for Kansas Bankers Ass'n.

Robert A. Schartz, Wichita, Kan., for plaintiff in 88–1156–C.

Christopher Redmond, Redmond, Redmond & Nazar, Wichita, Kan., Trustee in 88–1156–C.

CROW, District Judge.

## MEMORANDUM AND ORDER

These are three consolidated cases in which the trustee in each case appeals the decision of the bankruptcy court in *In re George*, 85 B.R. 133 (Bkrtcy.D.Kan.1988). Each case involves the disposition of Payment in Kind (PIK) certificates; the certificates or their proceeds are in the possession of each trustee. The facts are stipulated.

In its memorandum decision the bankruptcy court concluded, after a thorough review of the applicable statutes, regulations and legislative history, that neither the Food Security Act nor the enabling act creating the Commodity Credit Corporation granted the C.C.C. with the authority to pre-empt state law. As such, the court held that neither 7 C.F.R. § 770.4(b)(2) [1] nor

---

**1.** 7 C.F.R. § 770.4(b)(2) (1988) provides: "Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United

the anti-assignment provision of 7 C.F.R. § 770.6 can be used by the trustee in bankruptcy or a debtor in possession to avoid a properly perfected security interest. 85 B.R. at 139–43.

The bankruptcy court then concluded that PIK certificates which have been, or which are to be issued, as crop subsidy payments are properly categorized as proceeds of the crops. 85 B.R. at 146. The court then concluded that the PIK certificates that had been issued for participation in acreage reduction programs are properly categorized as general intangibles or contract rights. *Id.* The trustees in each case were required to relinquish the proceeds of the PIK payments to the secured creditors.

The trustees in each case challenge the bankruptcy court's decision. The court has reviewed the stipulated facts, the briefs, memoranda and supplemental material supplied by each of the parties, as well as the *amicus* brief filed by the Kansas Bankers Association, and is now prepared to rule on this matter.

## I. FEDERAL PRE–EMPTION: DOES THE FEDERAL REGULATION PRE–EMPT THE STATE LAW OF SECURED TRANSACTIONS?

■ To the extent that a conflict exists between state law and federal law, state law must yield. U.S. Const., Art. VI, cl. 2. Pre-emption may occur in six ways:

(1) When a federal statute expresses a clear intent to pre-empt state law;

(2) When there is outright or actual conflict between federal and state law;

(3) Where compliance with federal and state law is in effect physically impossible;

(4) Where there is implicit in federal law a barrier to state regulation;

(5) Where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for States to supplement federal law;

(6) Where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Public Service Com. v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986).

"Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Id.* However, "[a]n agency may not confer power upon itself" and cannot expand its power beyond the authority granted by Congress. *Id.* at 374, 106 S.Ct. at 1901.

The critical issue is whether Congress intended federal legislation to supersede state law. The Food Security Act of 1985, 7 U.S.C. § 1281 (1990 Supp.), et seq., does not expressly authorize the U.S.D.A or the C.C.C. to adopt regulations pre-empting state commercial law governing secured transactions. In the absence of express congressional authority, the delegation of pre-emption authority may only be determined from the circumstances of the federal legislation.

■ The court concludes that the necessary authorization by Congress to the C.C.C. to pre-empt state laws concerning secured transactions is absent. Part 770 of the Federal Regulations (titled "Commodity Certificates, In Kind Payments, and Other Forms of Payment")[2] cites as its authority 15 U.S.C. §§ 714b and 714c and 7 U.S.C. §§ 1441–1, 1444b, 1444b–2, 1444b–3, 1444b–4, 1445d, and 1425.[3] None of these authorities either expressly or impliedly authorizes delegation of pre-emption authority. In

States Government arising specifically under Federal statute."

**2.** The court notes that Part 770 was redesignated at 53 Fed.Reg. 20,290 (June 3, 1988) (interim), 53 Fed.Reg. 47,659 (Nov. 25, 1988) (final) and is currently codified at 7 C.F.R. § 1470 (1990). This redesignation effectuates no substantive change in the regulation.

**3.** It appears the citation to 7 U.S.C. §§ 1444b–2, 1444b–3, 1444b–4 is in error as those citations do not exist. It appears the citation to the correct authority should include 7 U.S.C. §§ 1445b–2, 1445b–3, and 1445b–4. *See In re Arnold,* 88 B.R. 917, 921 n. 6 (Bkrtcy.N.D.Iowa 1988) (court reaches same conclusion concerning citation error). In any event, this citation error does not affect the court's analysis of the pre-emption issue.

short, congressional intent to delegate pre-emption authority is not evidenced by the pervasiveness of a federal scheme, the need for uniformity among the states, or the danger of conflict between the administration of federal programs. *See In re Arnold,* 88 B.R. 917, 821 (Bkrtcy.N.D.Iowa 1988) (court reviews other federal courts considering the pre-emptive effect of Part 770; court adopts the bankruptcy court's analysis in *George,* 85 B.R. at 143). *See also In re Sunberg,* 729 F.2d 561, 563 (8th Cir.1984) (anti-assignment provisions, such as 7 C.F.R. § 770.6, are intended to insulate the government as benefit provider from conflicting claims over payments, not to pre-empt state commercial law as between third parties).

In conclusion, the court finds that state commercial law is not pre-empted by Part 770 of the Code of Federal Regulations. If Congress wished to control the use of PIK payments and prohibit their use for securing preexisting debt, it could have done so expressly. *See George* 85 B.R. at 140–41. In the absence of a clearer mandate from Congress, the court is unwilling to allow the operation of Part 770 to supplant well-established state law governing commercial transactions. Part 770, as it purports to invalidate state law security interests, is unenforceable.

## II. WHAT IS THE PROPER CLASSIFICATION OF THE PIK CERTIFICATES?

Since the bankruptcy court's decision in this case, the Tenth Circuit has considered the proper characterization of PIK payments. In *In re Schneider,* 864 F.2d 683 (10th Cir.1988), the debtors filed their Chapter 7 petition prior to completion of the government's approval process of their PIK application. The debtors contended that PIK amounts did not constitute property of the bankruptcy estate because they resulted from a post-petition contract involving post-petition services of the debtor. 864 F.2d at 683. The court of appeals agreed.

In *Schneider,* the court concluded that "[a]gricultural entitlement payments which result from the actual disposition of a planted crop are proceeds of that crop." *Id.* "Agricultural entitlement payments based on an agreement not to plant crops arise from accounts or general intangibles." *Id.* (citing *In re George,* 85 B.R. at 145). The court of appeals went on to say:

> In *Schneider v. Caprock Ind., Inc. (In re Lions Farms, Inc.),* 54 B.R. 241, 244–45 (Bkrtcy.D.Kan.1985) the Kansas bankruptcy court characterized unpaid PIK diversion payments as rights under an executory contract which are properly classified as accounts under Kan.Stat. Ann. § 84–9–106 (1983) and the 1983 Kansas Comment to that section. We agree. *Id.*

The court of appeals then reviewed the evidence and concluded that because the PIK enrollment agreement was not executed by the government as of the date the petition was filed, the agreement was not part of the debtor's estate. *Id.* at 686.

> The court of appeals concluded:
>
> Our holding is narrow. The proceeds of the payments-in-kind belong to the debtors under § 541(a)(6) because PIK contract formation had not been completed as of the date of the petition, and there is no suggestion that the sequence of events was planned to defeat a trustee's claim. We acknowledge that in many instances the debtor will have performed sufficient acts pre-petition to make the payments-in-kind part of the bankruptcy estate. *Id.*

The court has considered the impact of *Schneider* on the bankruptcy court's decision in this case and concludes that the creditor in each case is entitled to the proceeds of the PIK certificates.

### In re George

The trustee challenges the bankruptcy court's conclusion that Sante Fe Credit Union (Sante Fe) had a perfected security interest in the PIK certificates.[4] Sante Fe

---

4. The trustee did not submit his own brief, but instead adopted the brief submitted on behalf of

the Feists. The court's review of this issue is hampered by the fact that the two cases are not

extended credit to the debtors to finance their farming operation. The security agreement signed by the debtors and the financing statement filed by Sante Fe covers the debtors' interest in the 1986 wheat crop and "all debtor's rights in any ASCS or other State or Federal government payments pertaining to the 1986 wheat crop."

Dannell Joe George received three generic PIK certificates for his participation in the PIK acreage reduction and land diversion program. George received the PIK certificates prior to filing the Chapter 7 petition. The certificates were delivered to the trustee who sold the certificates and deposited the proceeds in the bankruptcy estate's account.

 The description in Sante Fe's financing statement adequately describes the PIK payments. A description is adequate if it reasonably identifies what is described. K.S.A. 84–9–110. A statement of collateral in a financing statement is adequate if it makes identification of the collateral possible. K.S.A. 84–9–402. In this case, Sante Fe could have classified its interest under the general classification of "accounts." However, Sante Fe chose to specifically identify the collateral: ASCS or other government payments pertaining to the wheat crop. This description clearly identified Sante Fe's collateral; surely no one could be misled by this description of the collateral.

Therefore, albeit that the bankruptcy court characterized the PIK certificates as proceeds of general intangibles, the bankruptcy court properly concluded that the Sante Fe's perfected security interest in the PIK certificates entitled it to the proceeds of the PIK certificates sold by the trustee.

### In re Bradford

 Clarence Leroy Bradford and Barbara Joyce Bradford filed for bankruptcy under Chapter 7 on October 1, 1986. In 1985 and 1986 the First State Bank and Trust Company of Larned, Kansas (First State) made several farm loans to the Bradfords. The security agreement signed by the debtors granted First Bank a security interest in "all annual and perennial crops growing or hereafter planted, grown or harvested," "proceeds," and "all government payments in kind." First State's financing statement covers, *inter alia*, all growing crops and proceeds from those crops.

The trustee in bankruptcy has received all of the PIK certificates issued to the debtor. Bradford entered the wheat deficiency program on March 10, 1986; his participation was approved on May 6, 1986. All of the PIK certificates issued in this case were issued by virtue of the debtors' participation in the 1986 wheat deficiency program regarding the debtors' 1985–1986 wheat crop. PIK certificates issued for participation in deficiency programs are "proceeds" of those crops. *In re Kruse*, 35 B.R. at 964–65. Therefore, at the time the debtors filed for bankruptcy, they were enrolled in the wheat deficiency program and had performed sufficient pre-petition acts to make the PIK payments part of the bankruptcy estate. As such, the bankruptcy court properly concluded that the First Bank, as a properly perfected secured party, was entitled to the proceeds of the PIK certificates.

### In re Feist

 From August of 1985 to July, 1986, Joseph and Anna Feist executed seven different notes in exchange for sums advanced by the John Bauer Estate. On August 14, 1985, the Feists signed a security agreement with the Bauer Estate granting a security interest, in part relevant to this appeal, all crops growing or to be planted for the 1985–1986 year on described real estate. The security agreement also gave the Bauer Estate an interest in "any and all increases, additions, accessions, substitutions and proceeds of

---

identical. *In re George* involves PIK payments issued for the debtors' participation in the PIK acreage reduction and land diversion program. *In re Feist* involves PIK payments arising from wheat and sorghum deficiency programs. Under the law of *Schneider,* the two types of PIK payments are not classified identically under Article 9. *Schneider,* 864 F.2d at 685. *See In re Kruse,* 35 B.R. 958 (Bankr.D.Kan.1983) (discussing different types of PIK programs).

the described property." The financing statement filed with the Kansas Secretary of State on August 15, 1985, included crops, "all contract rights and accounts now owned and hereafter acquired," and the proceeds from the covered collateral.

The debtors filed for voluntary bankruptcy on October 20, 1986. At the time of filing of the bankruptcy petition, Feist was enrolled in the PIK program, having entered into the program on April 18, 1986.[5] The first PIK payment was issued in December 1986 as payment under the 1986 wheat deficiency program. The second PIK payment was issued in March of 1987 for the Feists' participation in the 1986 sorghum deficiency program. The Feists have received no payments for their participation in the PIK acreage reduction. The trustee is in possession of the proceeds of the PIK payments.

In this case, the bankruptcy court correctly overruled the trustee's objection to the validity of the Bauer Estate's security interest in the PIK certificates. The PIK payments in this case were issued as crop deficiency payments, and as such were "proceeds."[6] Because the Bauer Estate had a properly perfected security interest in crop proceeds, and because the performance necessary to earn the payment was substantially, if not completely performed at the time of filing of bankruptcy, the Bauer Estate is entitled to the PIK proceeds.

In conclusion, the bankruptcy court's disposition of the PIK payments in each case is affirmed.

IT IS THEREFORE ORDERED that the decision of the bankruptcy court in each of these three consolidated cases, *In re George* (Case No. 88–1164–C), *In re Bradford* (Case No. 88–1155–C), and *In re Feist* (Case No. 88–1156–C) is affirmed.

---

**5.** The C.C.C.'s representative signed the agreement on May 9, 1986.

**6.** The cash from the sale of the certificates is identifiable cash proceeds covered by the Bauer

Estate's financing statement. K.S.A. 84–9–306. The Bauer Estate is therefore entitled to those proceeds. *See In re Kruse,* 35 B.R. at 965–66; 11 U.S.C. § 552(b).