In re Edwin D. SELZER and Judith
Ann Selzer, Debtors.

Bankruptcy Nos. 88–4237–R, 87–41255–7.

United States District Court,
D. Kansas.

Dec. 19, 1991.

Joseph I. Wittman, Topeka, Kan., for trustee.

Allan L. Hurlburt, Sharon Springs, Kan., Lynn D. Lauver, Topeka, Kan., for debtors.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This bankruptcy appeal involves the issue of whether a federal regulation governing generic commodity certificates issued by the Commodity Credit Corporation (CCC) preempt Kansas' secured transactions law. The bankruptcy court held that the federal regulation did not preempt state law and was an unconstitutional exercise of the CCC's authority. Having carefully reviewed the briefs filed by the parties, the court is now prepared to rule.

The standards of review are well-settled. The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. Bankr.R. 8013; *In re Mullet,*

817 F.2d 677, 678 (10th Cir.1987). The bankruptcy court's legal determinations are reviewed *de novo*. *In re Yeates*, 807 F.2d 874, 877 (10th Cir.1986).

The facts underlying this appeal are not in dispute. On August 6, 1986 and April 20, 1987, the debtors granted the Peoples State Bank of Sharon Springs, Kansas (Bank) security interests in "all annual and perennial crops now growing or to be grown" on certain real estate owned by the debtors and in the proceeds and products thereof, and in "all accounts receivables, contract rights [and] general intangibles now owned or hereafter acquired." The Bank subsequently perfected their security interests. On April 20, 1987, the debtors also executed two assignments to the Bank: one for $2000 of their government entitlement payments for the 1986 program year and one for $6000 of their government entitlement payments for the 1987 program year. The debtors subsequently received generic commodity certificates (GCC) for crops from the 1986 and 1987 program years. The debtors filed a voluntary petition for Chapter 7 relief on August 28, 1987. In the bankruptcy, the Bank claimed a security interest in the various GCC payments due the debtors for the years 1986 and 1987. The trustee contended that the Bank's security interests never attached to the GCC payments based on the application of a federal regulation and the language on the certificates themselves which purport to prevent attachment of state law security interests. The bankruptcy ruled against the position of the trustee and found that the Bank's security interests attached to the GCC payments because the CCC lacked the authority to preempt state law.

The federal regulation involved in this case, 7 C.F.R. § 770.4(b)(2), provides as follows:

> Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the U.S. Government arising specifically under Federal statute.

The trustee contends that the bankruptcy court erroneously concluded that the aforementioned regulation did not preempt state law. The trustee argues that the regulation carries out the intent of Congress as expressed in the Commodity Credit Corporation Charter Act and the Food Security Act of 1985. In support of his argument, the trustee points to two cases, *In re Halls*, 79 B.R. 417 (Bankr.S.D.Iowa 1987) and *In re Lehl*, 79 B.R. 880 (Bankr. D.Neb.1987), which have held that 7 C.F.R. § 770.4(b)(2) does preempt states' secured transactions law. The Bank in response asserts that the bankruptcy court correctly applied federal preemption law to the issue at hand. The Bank notes that other courts, including the District of Kansas, have reached conclusions contrary to the conclusions reached in *Halls* and *Lehl*.

■ Federal preemption of state law is based on the Supremacy Clause of the Constitution. U.S. Const., art. VI, cl. 2. The Supremacy Clause invalidates state laws which "interfere with, or are contrary to," federal laws. *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824). "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). Preemption can take one of three forms: (1) express preemption, where Congress passes a statute that by its express terms preempts state law; (2) implied preemption, where federal legislation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulations; and (3) actual preemption, where Congress speaks neither expressly nor impliedly of preemption, but state law is nevertheless preempted to the extent it actually conflicts with a federal statute or rule. *International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). The critical issue in a preemption analysis is whether Congress intended that federal regulation supersede state law. *Louisiana Public Service Comm. v. F.C.C.*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1987).

■ In *In re George*, 119 B.R. 800 (D.Kan.1990), Judge Crow considered the issue of whether 7 C.F.R. 770.4(b) preempted the state law of secured transactions and thus vitiated the creditors' claimed se-

curity interest. He held, in affirming Judge Pearson, that § 770.4(b) did not preempt state laws on secured transactions because the federal legislation did not expressly or impliedly authorize delegation of preemption authority to the Commodity Credit Corporation, which promulgated the regulations. *Id.* at 802. In reaching this conclusion, Judge Crow stated:

The court concludes that the necessary authorization by Congress to the C.C.C. to pre-empt state laws concerning secured transactions is absent. Part 770 of the Federal Regulations (titled "Commodity Certificates, In Kind Payments, and Other Forms of Payment") cites as its authority 15 U.S.C. §§ 714b and 714c and 7 U.S.C. §§ 1441–1, 1444b, 1444b–2, 1444b–3, 1444b–4, 1445d, and 1425. None of these authorities either expressly or impliedly authorizes delegation of pre-emption authority. In short, congressional intent to delegate pre-emption authority is not evidenced by the pervasiveness of a federal scheme, the need for uniformity among the states, or the danger of conflict between the administration of federal programs....

In conclusion, the court finds that state commercial law is not pre-empted by Part 770 of the Code of Federal Regulations. If Congress wished to control the use of PIK payments and prohibit their use for securing preexisting debt, it could have done so expressly.... In the absence of a clearer mandate from Congress, the court is unwilling to allow the operation of Part 770 to supplant well-established state law governing commercial transactions. Part 770, as it purports to invalidate state law security interests, is unenforceable.

*Id.* at 802–03.

We find the analysis and decision in *George* persuasive and shall follow it here. Other courts have reached the same conclusion. *In re Ferguson,* 112 B.R. 820 (Bankr.N.D.Tex.1990); *In re Arnold,* 88 B.R. 917 (Bankr.N.D.Iowa 1988); *In re Harvie,* 84 B.R. 197 (Bankr.D.Colo.1988). We are not persuaded by the two cases relied upon by the trustee because they do not contain a thorough preemption analysis. Neither 15 U.S.C. § 714b(g), nor any

provision in the Food Security Act of 1985, expressly empowers the CCC to promulgate regulations preempting state secured transactions laws. Moreover, the legislative history fails to reveal any intent by Congress to preempt state secured transactions laws. In sum, we shall follow Judge Crow and hold that 7 C.F.R. § 770.4(b) does not preempt states' commercial transactions law. The provisions of § 770.4(b) may not be used by a trustee or debtor in possession to avoid a properly perfected security interest. The decision of the bankruptcy court is affirmed.

The court notes that the trustee has also raised another issue in its brief: "If federal preemption is not found, the question remains as to whether or not the bank-appellee's security interest attached to the generic commodity certificates, or proceeds thereof?" The Bank points out that this issue was not considered by the bankruptcy court. We agree. The arguments raised by the trustee were not made to the bankruptcy court, so we shall not consider them on appeal.

IT IS THEREFORE ORDERED that the bankruptcy court's decision of September 27, 1988 is hereby affirmed.

IT IS SO ORDERED.