CORYDON STATE BANK, Appellee, v. M. A. SCOTT et al., Defendants; FARMERS CREDIT COMPANY, Appellant.

No. 42055.

FEBRUARY 6, 1934.

REHEARING DENIED MAY 19, 1934.

John F. Webber, Bracewell & Poston, and Miller & Everett, for appellant.

D. L. Murrow, for appellee and T. W. Miles.

H. K. Evans, for M. A. Scott and Colice Scott.

ALBERT, J.—In 1929, M. A. Scott, among other tracts of land, owned a 640-acre farm, referred to in the record as the "east farm." It was then heavily incumbered by outstanding real estate mortgages.

On the 11th day of May, 1929, Scott and his wife executed and delivered to the Wapello County Savings Bank, of Ottumwa, Iowa, two mortgages on said land, to secure notes outstanding aggregating $15,832, and at the same time executed a chattel mortgage covering all the crops sown, raised, and to be grown, and all rents, incomes, and profits for the years 1929, 1930, 1931, on said mortgaged real estate. These instruments were duly entered of record.

On the 7th day of November, 1930, M. A. Scott and wife executed a chattel mortgage to the Farmers Credit Company in the sum of $11,500, covering the personal property of the said Scott. This mortgage by its terms covered "all increase, and the increase from the increase thereof, additions thereto and substitutions therefor. It is my intention hereby to mortgage all of the property of the respective kinds above described, which I now own or may acquire, until the consideration herein named and all my other indebtedness to said mortgagee is fully paid according to the evidence of debt the said mortgagee now holds or may hold against me." This mortgage was duly recorded in the county in which the property was

situated. This farm at all times in controversy herein was occupied by the said M. A. Scott.

On February 24, 1931, Scott and wife executed to T. W. Miles a warranty deed for the aforesaid land, subject to the outstanding mortgages. This deed was never recorded. On the same day the said Miles entered into a written lease with Scott, by the terms of which Miles leased to Scott the aforesaid land for a term of two years from the 1st of March, 1931, at an annual cash rental of $2,250 per year. This rent was evidenced by two promissory notes of even date with said lease.

On September 24 following, Miles assigned these two rent notes and the lease to the Corydon State Bank as collateral security. The aforesaid lease was not entered of record in Wayne county.

On September 26, 1931, the then holder of the real estate and chattel mortgages made by Scott to the Wapello County Savings Bank commenced foreclosure, and in that proceeding the Corydon State Bank intervened and Scott and wife filed answer therein, alleging, among other things, that they were no longer the owners of the real estate, and that same belonged to T. W. Miles. Miles intervened, setting up his deed and lease and assignment thereof to the Corydon State Bank.

Prior to the commencement of this action, and on February 12, 1932, judgment and decree was rendered in that action in favor of the plaintiff and against Scott, which decree found that the rights of Miles and the Corydon State Bank to the possession of the mortgaged real estate to March, 1933, was superior to any rights of such possession in the plaintiff, and the landlord's lien of the Corydon State Bank was established as a lien on the crops raised on the real estate from March 1, 1931, to March 1, 1932, superior to the lien in favor of the plaintiff under the chattel mortgage sought to be foreclosed in that action. The Farmers Credit Company was not a party to that action.

On February 13, 1932, special execution issued on both judgments, one covering the real estate and the other the personal property, and on sale a deficiency was left of something like $11,000.

In May, 1931, Scott was in need of corn and feed for his live stock. Miles refused to furnish further funds, and Scott applied to the Farmers Credit Company and was advanced $180 to furnish feed, and on the 29th of May he executed and delivered to the Farmers Credit Company his note for $180; and on July 3, 1931, $300

more was borrowed by Scott from the Farmers Credit Company to cover threshing expenses, and the Farmers Credit Company was given a chattel mortgage on forty acres of wheat on the aforesaid farm.

On February 9, 1932, the Corydon State Bank commenced this action to recover the rents due on one of the $2,250 notes then held by it, and caused a writ of attachment to issue, levied on certain live stock and grain on the Scott farm, but the property thus levied on was left on the farm in the custody of Scott, who signed a receipt therefor to the sheriff.

The Farmers Credit Company was made a party defendant to the present action and appeared and filed its cross-petition.

This matter thus stood until July 8, 1932, when the Farmers Credit Company, under its cross-petition, secured a writ of attachment and caused the sheriff to levy on and take from the said farm 57 head of cows, 4 bulls, 29 calves, 1 three-year-old heifer, 1 two-year-old heifer, 31 steers, and 41 heifers. Included in this property thus levied on were the cattle and hogs levied upon by the Corydon State Bank under its landlord's attachment in February, 1932. The property thus levied on by the specific attachment of the Farmers Credit Company was taken to Wapello county and cared for by the agents of the Farmers Credit Company. In the present action Scott and wife defaulted, and on trial of the case the matter settled down to a question of priority between the liens of the alleged landlord and the chattel mortgages of the Farmers Credit Company. The decree under date of November 17, 1932, among other things, found that the Farmers Credit Company, under a special writ of attachment, had appropriated certain property on which its lien was junior, and it had not accounted to the Corydon State Bank under its landlord's lien, as follows: One bull, value of $60; 9 hogs, value of $45; 22 calves, value of $264; 1 steer, value of $40; 34 head of Jersey steers and heifers, red steers and heifers, and roan steers and heifers, value of $852.50—making a total of $1,261.50, and gave the Corydon State Bank a judgment against the Farmers Credit Company for that amount. It further found that the Corydon State Bank had a first lien on certain other property which was not taken under the credit company's special attachment, "and any and all other property belonging to the defendant Scott which is increase of live stock born on the premises after the first day of March, 1931. * * * That all of the other property levied upon by the defendant and cross

petitioner belongs to it under its chattel mortgage, which included the wheat crop mortgaged to it to secure the payment of its $300 note." As to the hogs it was found that Scott had disposed of all of same, except 9, which were taken by the cross-petitioner under the specific attachment. Foreclosure decree was given in favor of the Farmers Credit Company against Scott and his wife, and it was ad-judged that the landlord's lien of the Corydon State Bank, under its lease for the year ending March 1, 1933, be established as a lien upon the growing crops superior to that of the Farmers Credit Com-pany.

It will thus be seen that the turning point in this case is purely a question of priority of liens as between the Corydon State Bank and the Farmers Credit Company.

The issues in this case are further narrowed by the fact that, with the exception of two items, the only property involved is the increase of the live stock on this land after March 1, 1931. It is first insisted that Miles was simply a trustee of this property, be-cause of the want of consideration for the deed made by Scott to Miles. We are unable to agree with the appellant, because, first, in argument appellee concedes that there was an indebtedness owing by Scott to Miles that was the consideration for the deed; and, fur-ther, the record shows that the mortgage indebtedness against said land far exceeded its value. In fact, on the sale under mortgage foreclosure there was a deficiency of something like $7,000. We must hold, therefore, that the deed had a valid consideration.

It is next urged that, because the deed and lease were not recorded, they have no validity as against the rights of the credit company. The statutory provisions for recording instruments are limited to those that affect real estate, and are for the benefit and protection of those who afterward acquire a lien or interest in such real estate. It is apparent in this case that the Farmers Credit Com-pany never had any interest in this real estate in any shape, man-ner, or form, and therefore cannot call to its aid the statutory pro-visions with reference to recording. It is also insisted that the finance company extended its loan and made two additional loans without knowledge of the transactions between Scott and Miles. The evi-dence in the case, however, shows that, at the time the additional loans were made and the time it is claimed the debt was extended by the credit company, the credit company was not the owner and holder of the debt and chattel mortgage. It was not the owner and

holder thereof at the time it intervened in this action and sued out the special attachment. In fact, the record shows that it only became an owner and holder of the same, if at all, on the first day of the trial of this case.

■ Returning now to the crucial question herein, Which of these parties is entitled to priority on the increase of the stock on this land after March 1, 1931? Regardless of the arguments to the contrary, we think this question must be disposed of by our holdings in Dilenbeck v. Security Savings Bank, 186 Iowa 308, 169 N. W. 675, 172 N. W. 486, and Mau v. Rice Bros., 216 Iowa 864, 249 N. W. 206. In these cases we laid down the rule that, under circumstances of this kind, as between the landlord and the chattel mortgage holder, the landlord has the superior right. The appellee makes no claim to the property covered by the appellant's mortgage that was in existence prior to March 1, 1931. It follows, therefore, that the ruling of the district court on this question was correct, and the credit company, having under special attachment appropriated certain property to its own use, was accountable to the Corydon State Bank for the value thereof, which was fixed by the court and covered by the decree which we approve.

We have checked up the record on these various items, and, while same is quite unsatisfactory as to some of the items and is also unsatisfactory as to the number of the various animals (because the record shows the death of part of them and the sale of some others), there is nothing in the record to show the proportion thereof which is chargeable against the increase of the stock on the farm after March 1, 1931, and we feel that the district court reached as satisfactory a conclusion thereto as the record warrants.

A motion was made to dismiss this appeal, which was ordered submitted with the case. We have considered the same, and conclude that same should be, and it is hereby, overruled.

We can find nothing in the record which will warrant a disturbing of the decree of the district court, which is affirmed.

CLAUSSEN, C. J., and KINDIG, EVANS, and DONEGAN, JJ., concur.