In re Glen D. HARVIE, a.k.a. Glen Harvie, Social Security No. 524–22–1235, and Mary E. Harvie, a.k.a. Mary Harvie, Social Security No. 525–76–5558, Debtors.

**EASTERN COLORADO BANK, Applicant,**

v.

**Glen D. HARVIE, Mary E. Harvie, and Christopher Clark, Chapter 7 Trustee, Respondents.**

Bankruptcy No. 87 B 08222 C.

United States Bankruptcy Court, D. Colorado.

March 21, 1988.

·**198**

Dwight K. Shellman, III, James T. Burghardt, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for applicant.

Robert D. Hawthorne, Limon, Colo., for respondents.

OPINION AND ORDER REGARDING CONSERVATION RESERVE PROGRAM PAYMENTS IN EASTERN COLORADO BANK'S MOTION FOR RELIEF FROM STAY

PATRICIA A. CLARK, Bankruptcy Judge.

This matter arises from the motion for relief from stay of Eastern Colorado Bank (the Bank). The Bank contends that it is entitled to relief from stay to collect the proceeds of payments made to the debtors in the form of Commodity Credit Corporation commodity certificates as "rents" un-

der an assignment of rents provision in a deed of trust held by the Bank as security for a promissory note from the debtors. The debtors contend that the Bank does not have a security interest in the Commodity Credit Corporation commodity certificates due to certain federal regulations adopted in connection with the Conservation Reserve Program that purportedly prohibit any assignment of or security interest in the certificates in order to secure a pre-existing indebtedness.

The facts as stipulated by the parties are as follows. On July 17, 1986 the debtors executed and delivered to the Bank a promissory note in the original principal amount of $485,161.21. That note represented a renewal of a prior debt of the debtors to the Bank. The note is secured by a first deed of trust dated July 17, 1986 against certain real property owned by the debtors located in Cheyenne County, Colorado. The debtors' deed of trust encumbering the real property contains an assignment of rents provision which entitles the Bank to have "all rents, issues and profits, income and revenue" from the real property applied to the payment of the debt. The promissory note was not executed in order to fund the debtors' current crop year.

On March 27, 1987 the debtors entered into a Conservation Reserve Program contract with the United States Commodity Credit Corporation through the Agricultural Stabilization and Conservation Service under the aegis of the Department of Agriculture. On July 13, 1987 the debtors filed a Chapter 12 petition in bankruptcy and on October 12, 1987 the debtors filed a motion to convert their Chapter 12 case to a Chapter 7 case. This Court ordered such conversion on October 19, 1987. On October 6, 1987 a Commodity Credit Corporation Commodity Certificate No. 0400188, Serial No. 26236540, was issued to the debtors for a generic commodity in the amount of $12,644 pursuant to a Conservation Reserve Program (CRP) contract entered into on March 27, 1987.

The debtors have already stipulated to the Bank's motion for relief from automatic stay with regard to the land, which rep-

resents the subject acrearage in the CRP contract. Accordingly, the only issue before this Court at this time is the Bank's entitlement to the proceeds of the October, 1987, commodity certificate as security for the note of July 17, 1986.

Initially this Court must determine whether the Commodity Credit Corporation commodity certificate issued to the debtor should be considered "rent" as that term is used in the Bank's deed of trust. Although the term "rent" is not defined in the deed of trust, it is axiomatic that rent is the consideration for the use or occupation of property. *Black's Law Dictionary*, 1461 (5th ed. 1979). In its simplest terms, the first legal issue revolves around whether the commodity certificate was issued to the debtor as consideration for a specific use of the debtor's property under the Conservation Reserve Program.

As a matter of background, the Court notes that the Conservation Reserve Program arises out of 16 U.S.C. §§ 3831–3845 (Cum.Supp.1987), the 1985 Food Security Act. Pursuant to this Act, the Secretary of Agriculture is charged with formulating and carrying out a conservation reserve program during the 1986 through 1990 crop years through contracts with landowners and operators for ten-year periods in order to "assist owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms or ranches." 16 U.S.C. § 3831(a) (Cum.Supp.1987). The statutes and accompanying regulations require the landowner or operator to remove erodible land from production and to follow certain prescribed conservation practices in order to receive annual compensation under the terms of the contract.

The Act provides for payment to the landowner or operator in either cash or in-kind commodities through the Commodity Credit Corporation, an entity created by Congress in 1948 to, among other things, facilitate the orderly distribution of agricultural commodities. 15 U.S.C. § 714 (1983). Two federal regulations, 7 C.F.R. § 770.4 (1987) and 7 C.F.R. § 704.16 (1987), provide for the issuance of commodity certificates as payment from the Commodity Credit Corporation to participants in the Conservation Reserve Program. Such commodity certificates can be exchanged for either inventory held by the Commodity Credit Corporation or for cash. 7 C.F.R. § 770.4(a) (1987).

The Court begins its analysis by examining the terms and conditions of the subject CRP contract. The Conservation Reserve Program Contract, CRP–1, which the debtor signed, specifically states in Item No. 6 that the compensation received is $40 as the "rental rate per acre". The appendix to Form CRP–1 of the Conservation Reserve Program contract, indicates that *Annual Rental Payment* means "the per acre amount specified in Item 6 on Form CRP–1, Form F, Form CRP–1 multiplied by the number of accepted acres which may be paid to a participant to compensate such participant for placing eligible cropland in the Conservation Reserve Program." The contract also provides that certain federal regulations will be made a part of the agreement, including those of 7 C.F.R. Part 704. The federal regulations of Part 704 make numerous references to CRP payments as "rental payments" to compensate CRP participants for placing eligible cropland in the program. *See* Section 704.-2(a)(2), 704.12(b), 704.13(a)(2), and 704.16(a). Moreover, the Court notes that the Food Security Act of 1985 in 16 U.S.C. § 3833 and § 3834 (Cum.Supp.1987) specifically denominates CRP compensation made to participants as "rental payments".

These references to payments as rent in the debtor's CRP contract, together with the facts and circumstances surrounding what can only be described as a ten-year lease agreement between the debtor and the Department of Agriculture for the use of the debtor's real property in a certain fashion, leaves this Court to conclude that the CRP contract payment made to the debtor, in the form of a Commodity Credit Corporation commodity certificate, is in the nature of a rental payment.

Support for this holding can be found in two recent decisions of this Court. In *In re John Clark, Jr., and Alma C. Clark*, 82

B.R. 131 (Bankr.D.Colo.1987), Judge Brumbaugh addressed this specific issue and also concluded that CRP payments, in the form of commodity certificates, are rental payments. In another case decided by this Court, *In re Ratliff,* 79 B.R. 930 (Bankr. Colo.1987), Judge Matheson also determined that CRP payments were in the nature of rents and not proceeds of crops.

This Court's determination that a CRP payment in the form of a commodity certificate should be deemed rent does not completely resolve the issue of the Bank's entitlement to these funds pursuant to their deed of trust. Another issue before this Court, which was not before either Judge Brumbaugh or Judge Matheson in the above-cited cases and therefore left unaddressed, is whether certain federal regulations that purportedly restrict the encumbrance and assignment of commodity certificates issued to a CRP participant will destroy a creditor's perfected security interest in the proceeds of those certificates.

■ The debtor contends that two federal regulations governing CRP contracts render the Bank's security interest in the commodity certificates invalid. The debtor's CRP contract specifically makes Parts 709 and 770 of Title VII of the Code of Federal Regulations a part of the terms and conditions of the contract. *See* Exhibit 1, Appendix to Form CRP–1, Section 8. The debtor contends that 7 C.F.R. § 709.3(a) (1986) precludes assignment in this case by providing that;

> A payment which may be made to a producer under any program to which this part is applicable may be assigned only as security for cash or advances to finance making a crop, handling or marketing agriculture commodity, or performing a conservation practice, for the current crop year. *No assignment may be made to secure or pay any pre-existing indebtedness of any nature whatsoever.* (Emphasis added).

In a similar vein, the debtor also contends that 7 C.F.R. § 770.4(b) prohibits commodity certificates from being subject to any lien, encumbrance, or security inter-

est. The full text of 7 C.F.R. § 770.4(b) (1987) provides that:

> 1. The provisions of this section or the commodities certificates shall take precedence over any state statutory or regulatory provisions which are inconsistent with the provisions of this section or with the provisions of the commodities certificates.
>
> 2. Commodities certificates shall not be subject to any lien, encumbrance, or other claim or security interest, except that of an agency of the United States Government arising specifically under federal statute.
>
> 3. The provisions of the paragraph (b) shall apply without regard to the identity of the holder of the certificate.

Although the interpretation of these particular federal regulations is a matter of first impression for this Court, it is noted that other cases have construed similar "anti-assignment" and "lien voidance" provisions contained in federal regulations in the context of determining the validity of security agreements in bankruptcy. Specifically, Judge Brumbaugh in *In re Preisser,* 33 B.R. 65 (Bankr.D.Colo.1983), held that a similar "anti-assignment" and "lien voidance" clause governing PIK benefits (another Department of Agriculture program designed to compensate farmers and ranchers for the non-production of grain crops) would not destroy a valid pre-existing security interest. The governing federal regulation at the time of the *In re Preisser* decision was found at 7 C.F.R. § 770.6(f) (1983):

> Any payment in kind or portion thereof which is due any person shall be made without regard to questions of title under state law, and without regard to any claim of lien against the commodity, as proceeds thereof, which may be asserted by any creditor.

In reviewing this regulation, Judge Brumbaugh held:

> This regulation clearly is intended to promote the administrative convenience of the government agency disbursing the benefits. It cannot have been intended

to void liens which are otherwise valid under state and federal bankruptcy laws. *In re Preisser*, 33 B.R. 67.

Similarly, the Eighth Circuit in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984) held that the same "anti-assignment" provision considered by Judge Brumbaugh in *In re Preisser* merely governed the rights of the parties claiming PIK benefits directly from the federal government. The court went on to state that these provisions:

> [D]o not prevent one who is entitled to the benefits from pledging the benefits as security on loans properly made under state law. Simply because the government will refuse to deliver benefits to an assignee not appearing on the proper federal forms does not mean that an assignor can totally disregard legal obligations to the assignee. Such "anti-assignment" provisions are intended to insulate the government as benefit provider from conflicting claims over payments, not to pre-empt state commercial law as between third parties. (Citations omitted.) Neither do we read anything in other PIK regulations to restrict program beneficiaries from voluntarily encumbering their PIK benefits.

*See also In re Lee*, 35 B.R. 663 (Bankr.N.D. Ohio 1983).

The Court notes that PIK benefits are somewhat different from the commodity certificates; however, each is a type of compensatory payment made to qualifying landowners or operators under similar farm-related programs administered by the Commodity Credit Corporation. Therefore, even though the "anti-assignment" regulation governing PIK payments, as it existed at the time of those cases, is somewhat different from the "anti-assignment" and "lien voidance" regulations governing the

CRP commodity certificate rental payment to the debtor, the rationale expressed in *In re Preisser* and *In re Sunberg* is nonetheless applicable to the instant situation.

As delineated earlier, the avowed purpose of the Conservation Reserve Program is to "assist owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms and ranches". 16 U.S.C.S. § 3831 (Cum.Supp.1987). Nowhere in that Act is there the avowed congressional purpose of providing cash flow support to farmers at the expense of secured creditors through the destruction of security interests or other encumbrances that might attach to the proceeds of CCC commodities certificates under consensual lien agreements. Accordingly, this Court will read the language of the two regulations at issue, 7 C.F.R. § 709.3(a) (1986) and 7 C.F.R. § 770.4(b) (1987), in their most restrictive sense by concluding that such provisions are merely for the administrative convenience of the federal government and are not meant to eradicate valid security interests or other types of perfected encumbrances. The administrative convenience afforded the Department of Agriculture in this case is merely to provide for the orderly issuance of commodity certificates so they can be easily negotiated by the debtor without the Department of Agriculture's concern for the claims and demands of third parties.

A close reading of these two regulations indicates that nothing in either provision prohibits the attachment of a security interest nor the assignment of rent to the *proceeds* of a commodity certificate. Therefore, in order not to invalidate either federal regulation *in toto*, this Court finds that once the commodity certificates are in the hands of a debtor, the *proceeds* thereof can become subject to private consensual liens.[1]

---

1. An examination of the history of the development of 7 C.F.R. § 770.4(b) upholds this Court's view that this provision was not intended to prohibit debtors from collecting the proceeds of commodity certificates. The interim regulations for this provision, amended in March of 1986, stated, "Commodity certificates, *or the proceeds thereof*, may not be subjected to any claim of lien by any creditor except agencies of the U.S. Government." 51 Fed.Reg. 8453, § 770.4(8) (emphasis added). A subsequent revision of that interim regulation, effective June 16, 1986, became the final version of 7 C.F.R. § 770.4(b)(2) (1987) and deleted the language prohibiting an encumbrance of proceeds of commodity certificates. 51 Fed.Reg. 21828, 21834 (June 16, 1986). In light of the general rule that a change in the language of a statute or regulation indicates an intent to change its meaning and alter prior law, the court concludes that the subsequent revision of this regu-

More importantly, as a matter of policy, the adoption of this restrictive reading of these federal regulations will result in a reconciliation of the avowed purpose and attendant administration of the Conservation Reserve Program together with the policy of preserving the property rights of secured creditors in the Bankruptcy Code and under state law.

The debtor has cited the case of *In re Azalea Farms, Inc.*, 68 B.R. 32 (Bankr.M.D.Fla.1986) as authority for the proposition that an "anti-assignment" clause in a federal regulation governing a Commodity Credit Corporation payment should be given a strict constructive reading in order to provide cash to farmers to finance operations free of any pre-existing liens. This Court notes that the portion of the opinion in *In re Azalea Farms, Inc.* cited by the debtor as authority for the debtor's theory of "lien voidance" was merely dictum and not essential to the court's holding in the case. This Court rejects the dictum of *In re Azalea Farms, Inc.* to the extent it calls for a literal reading of "anti-assignment" clauses in federal regulations governing compensatory payments under federal agricultural assistance programs.

In conclusion, this Court holds that the Bank has established a perfected security interest in rents of the debtor and that the CRP payment in the form of a commodity certificate constitutes rent to which the Bank is entitled pursuant to its deed of trust when such certificate is sold and reduced to cash proceeds; therefore, it is

ORDERED that Eastern Colorado Bank is granted relief from the automatic stay to collect the proceeds of the commodity certificate.

lation by the Secretary of Agriculture can only mean that the federal government will not prohibit the attachment of a valid consensual lien

under state law to the proceeds of commodity certificates.