**In re Georgie W. ARNOLD and Laura J. Arnold, Debtors.**

**Bankruptcy No. 87–00767W.**

United States Bankruptcy Court,
N.D. Iowa.

July 8, 1988.

Gregory J. Epping, Cedar Rapids, Iowa, for debtors.

Kristin Tolvstad Davis, Asst. U.S. Atty., Cedar Rapids, Iowa, for Farmers Home Admin.

Carol Dunbar, U.S. trustee.

## MEMORANDUM OF DECISION AND ORDER RE: DENIAL OF CONFIRMATION OF PLAN OF REORGANIZATION

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the Court is the confirmation of the Substituted Plan of Reorganization filed by Georgie W. Arnold and Laura J. Arnold, Debtors. A final confirmation hearing was held on January 21, 1988 in Waterloo, Iowa. The matter was submitted to the undersigned for consideration on March 8, 1988. Additional facts were presented to the Court by stipulation on June 21, 1988. This ruling shall constitute Findings and Conclusions as required by Bankr.R. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### I.

Debtors filed a Chapter 12 petition in bankruptcy on March 30, 1987. Their initial plan of reorganization was filed on June 26, 1987. Farmers Home Administration (FmHA) objected to the plan. A new plan was filed on December 18, 1987. Pursuant to the Court's order of November 17, 1987, Debtors notified all creditors of the new plan, and a bar date was set for objections.

FmHA timely objected to the new plan. A continued final confirmation hearing was held January 21, 1988. Briefs on two unresolved [1] issues were submitted by both parties.

### II.

### A.

FmHA first objects to Debtors' treatment of the claim of George E. Arnold, Debtors' lessor (Lessor) of farm real estate. FmHA argues it has a perfected lien in Debtors' 1986 corn crop which is superior to the landlord's lien held by Lessor for unpaid 1986 rent. Accordingly, FmHA argues the preferential treatment of Lessor renders Debtors' plan unconfirmable under 11 U.S.C. § 1225(a)(4).

Lessor's claim is described in the plan as one for $5,700 in unpaid rent for the 1986 crop year which is secured by a first lien on 12,000 bushels of corn. Debtors' proposed treatment of this claim is to pay it in full upon confirmation of the plan by the sale of the harvested corn [2] with the balance of the corn sale proceeds to be applied to FmHA's secured claim.

One of FmHA's claims is described as being secured by a second lien on the 12,000 bushels of corn at an approximate value of $11,100 and a first "blanket" security interest of $52,080 in Debtors' farm machinery and livestock.

Debtors' proposed treatment of this claim is to apply the balance of the corn sale proceeds to the lien on the corn and pay the balance of the $52,080 with 9% interest over seven years. Annual payments of $10,347, which represent the blended amortized principal and interest due, are to be made on each anniversary of the confirmation date beginning on the first anniversary.

FmHA does not challenge Lessor's claim for unpaid rent but only argues that Lessor does not have a contract or statutory lien on the corn which is prior to FmHA's lien on the corn and, therefore, the plan fails to

---

1. FmHA's objection to the treatment of the claim of Irving Arnold was resolved at the January 21, 1988 hearing.

2. The corn was sold in September, 1987 for $17,688.85.

meet the requirement of 11 U.S.C. §§ 1222(b)(1) and 1225(a)(4) because Lessor is given advantageous treatment.

### B.

■ The lease between Debtors and Lessor gave Lessor a contract lien for unpaid rent:

> The said first party [Lessor] shall have a lien for the rent at any time remaining unpaid, upon the terms of this lease and a lien upon any and all the property of said second party [Debtors] brought upon, produced or used on said premises during the term, whether the same is exempt from execution and attachment or not.

Iowa courts have generally recognized liens created by contracts as chattel mortgages. *Baron v. Waldo (In re Waldo)*, 70 B.R. 16, 18 (Bankr.N.D.Iowa 1986) (see cases cited therein). As previously held by this Court, in Iowa a chattel mortgage must be recorded to be effective against existing creditors or subsequent purchasers. *Id.* Since the lease was not entered into before FmHA perfected its lien on Debtors' crops on May 30, 1978 and since there is no evidence that this contractual security interest was ever perfected, the contract does not give Lessor a perfected lien on the 1986 corn crop.

■ Lessor also had a statutory lien in the 1986 crop under Iowa Code § 570. It is well settled in Iowa, however, that a landlord's statutory lien against a crop grown on rented land has priority over any consensual lien a debtor may give in the crop. *Perkins v. Farmers Trust and Savings Bank*, 421 N.W.2d 533, 535 (Iowa 1988) (a landlord's lien is superior to the rights of the chattel mortgage held on crops not yet in existence at the time the chattel mortgage was given); *see also First National Bank v. Holtz (In re Holtz)*, 62 B.R. 782, 787 (Bankr.N.D.Iowa 1986) (citing *Corydon State Bank v. Scott*, 217 Iowa 1227, 1230–32, 252 N.W. 536, 538–39 (1934); *Dilenbeck*

*v. Security Savings Bank*, 186 Iowa 308, 169 N.W. 675 (1918)). Accordingly, FmHA's contention that Lessor does not have a paramount secured interest under a statutory lien in the crop proceeds is incorrect.

■ FmHA's contention that Debtors' failure to avoid Lessor's statutory lien renders the plan unconfirmable is persuasive. *See In re Rude*, No. 83–04156, slip op. at 5 (Bankr.N.D.Iowa, Oct. 25, 1985). A statutory lien for rent is avoidable. 11 U.S.C. § 545(3); *see also* 11 U.S.C. § 544(a). If avoided, it is preserved for the benefit of the estate. 11 U.S.C. § 551. To the extent that Debtors, as debtors-in-possession under 11 U.S.C. § 1203, have elected not to avoid Lessor's lien, they have treated him favorably. This favorable treatment of Lessor, without cause, does not meet the mandate of § 1222(b)(1) that the plan not discriminate unfairly against a class or classes of unsecured creditors. 11 U.S.C. §§ 1222(b)(1).

Debtors have not justified their failure to avoid Lessor's lien [3]. Moreover, there is no showing that unsecured creditors remain unaffected by Debtors' failure to avoid the lien either because all unsecured creditors will be paid in full or because Lessor is otherwise entitled to full payment as an administrative expense claimant.

### III.

### A.

■ Debtors received a generic commodity certificate from the Commodity Credit Corporation (CCC) for $5,403.89 on October 1, 1987. The parties stipulated that it represents a payment for the second half of the 1986 crop year for Debtors' participation in a deficiency payment program under the provisions of 7 USC § 1444a, 7 U.S.C. § 1445b–4, 16 U.S.C. § 590h, and corresponding regulations. The amount of the payment was based on the value of an

---

**3.** The cash flow statement in Debtors' plan sets forth a $12,000 annual rent payment—the same rent due under the 1986 lease with Lessor. The Court is left to wonder whether this rent is pursuant to an unexpired lease with Lessor which has not been expressly assumed in the plan or whether a new lease has been executed.

average crop (corn) yield for the property set aside.

According to FmHA's Proof of Claim, it took a security interest in Debtors' crops and chattels in June of 1978. Similar security interests were taken in subsequent years including 1986. Each agreement provided for a security interest in:

[a]ll accounts, contract rights and general intangibles, as follows: All Government program payments and rights of ALL types plus ALL other contractual agreements of ALL types between borrower and ALL third parties.

Appropriate financing statements were filed.

FmHA argues Debtors' plan fails to recognize that FmHA has a secured interest in the commodity certificate either as a proceed of Debtors' 1986 crop or as a contract right in government payments. Debtors do not dispute the scope or validity of FmHA's security documents but respond that FmHA has no secured interest in the commodity certificate because applicable federal regulations prohibit assignment of a commodity certificate and provide that a commodity certificate shall not be subject to a lien. The key regulations relied on by Debtors to displace FmHA's secured interest in the commodity certificate state:

Commodity certificates shall not be subject to any lien, encumbrance, or other claim or security interest except that of an agency of the United States Government arising specifically under Federal statute.

7 CFR § 770.4(b)(2).

[N]otwithstanding any other provision of this chapter, a payment made under this part may not be the subject of an assignment, except as determined and announced by the CCC.

7 CFR § 770.6 (in pertinent part). The face of the certificate also sets forth the limitation of 7 CFR § 770.4(b)(2) and incorporates all of 7 CFR Part 770 by reference.

### B.

Four courts have recently considered the impact of 7 CFR § 770.4(b)(2) on a secured interest in a commodity certificate. Different conclusions were reached.

In *In re Halls*, 79 B.R. 417 (Bankr.S.D. Iowa 1987), the court considered whether regulations governing the deficiency program payments thwart some debtors' efforts to assign generic commodity certificates as security. The court concluded the certificates cannot be encumbered because 7 CFR § 770.6 precludes assignment of payments to creditors for planting, cultivating, and harvesting a crop [4] and because 7 CFR § 770.4(b) clearly states that commodity certificates are not to be subject to any encumbrance. *Id.* at 420. The court also highlighted the emphasis the regulations place on transferability of certificates. *Id.* at 421. Finally,[5] the court held that the Supremacy Clause dictates that state law on secured transactions must yield to these federal regulations to the extent a conflict exists. *Id.* The same conclusion was reached in *In re Lehl*, 79 B.R. 880 (Bankr. D.Neb.1987) (7 CFR § 770.4 preempts, and thus invalidates, security interests in CCC certificates created pursuant to state law).

In *Security Bank & Trust Co. v. Case (In re George)*, 85 B.R. 133, 138–43 (Bankr. D.Kan.1988), the court questioned whether 7 CFR § 770.4(b)(2) could "preempt" state law on secured transactions and thus vitiate a creditor's claimed security interest in a commodity certificate. After an extensive review of decisions addressing conflicts between federal laws and regulations and state laws, the court found a federal agency's power to preempt state law

---

**4.** The court in *In re Halls*, 79 B.R. 417, 420 (Bankr.S.D.Iowa 1987), relies on the explanatory remarks following 7 CFR 770.6 in concluding that 770.6 was added to prohibit the types of assignments allowed by 7 CFR Part 709. Part 709 permits an assignment of payments for "security cash or advances to finance making a crop, handling or marketing an agriculture commodity, or performing a conservation prac-

tice, for the current crop year." 7 CFR § 709.3(a) (in pertinent part).

**5.** The court also held the regulations retroactively applied to a security agreement executed prior to the effective date of the regulations. *In re Halls*, 79 B.R. 417, 421 (Bankr.S.D.Iowa 1987).

through regulation must be clearly delegated by Congress. *Id.* at 139. The court then concluded that since Congress had not authorized CCC to preempt state law, "[t]he preemptive provisions of the regulation purporting to invalidate state law security interests are simply unenforceable" if a trustee or debtor-in-possession attempts to use them to avoid a properly perfected security interest. *Id.* at 143.

In *Eastern Colorado Bank v. Harvie (In re Harvie)*, 84 B.R. 197, 201 (Bankr.D.Colo. 1988), the court also questioned whether the anti-assignment provisions in 7 C.F.R. § 709.3(a)(1986) and 7 C.F.R. § 770.4(b) (1987) are valid. The court concluded that when read in their most restrictive sense, these regulations are for the "administrative convenience" of the federal agencies and are not meant to "eradicate valid security interests or other types of perfected encumbrances." *Id.* at 201. They merely "provide for the orderly issuance of commodity certificates so they can be easily negotiated by the debtor without the Department of Agriculture's concern for the claims and demands of third parties." *Id.*

The court in *Harvie* did not totally invalidate either regulation. Rather, the court found that a close examination of the language of the regulations indicates that while commodity certificates themselves may be subject to the prohibition on assignments, the *proceeds* of the certificates may be subject to private consensual liens. *Id.* The court found it relevant that an amendment to 7 C.F.R. § 770.4(b) effective June 16, 1986 deleted language which excepted proceeds of commodity certificates from creditors' liens. *Id.* 201 at n. 1. The court in *Harvie* also emphasized that as a matter of public policy a restrictive reading of these federal regulations will "result in a reconciliation of the avowed purpose and attendant administration of the Conservation Reserve Program together with the policy of preserving the property rights of secured credits in the Bankruptcy Code and under state law." *Id.* at 202.

The decision of the court in *George*, 85 B.R. at 143, is persuasive. The necessary authorization by Congress to CCC to preempt state laws on secured transactions is absent. Part 770 of the Federal Regulations (titled "Commodity Certificates, In Kind Payments, and Other Forms of Payment") cites as its authority 15 U.S.C. §§ 714b and 714c and 7 U.S.C. §§ 1441–1, 1444–1, 1444b, 1444b–2, 1444b–3, 1444b–4, 1445d, and 1425.[6] A review of these authorizing provisions uncovers no express delegation of authority nor can the necessary congressional intent be gleaned from the pervasiveness of a federal scheme, the need for uniformity among the states, or the danger of conflict between the enforcement of state laws and the administration of the federal programs. *Id.* at 14–21 (citing *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604, *reh. denied*, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977); and *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 *reh. denied*, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984)). Accordingly, this Court joins the court in *George*, 85 B.R. at 143, and concludes that 7 CFR 770–4(b)(2) and 7 CFR 770.6 do not validly preempt state law on secured transactions.[7]

Further support for the conclusion that 7 CFR § 770.6 does not preempt Iowa's secured transactions laws is found in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984). Mirroring the rationale espoused in *Harvie*, 84 B.R. at 201, the court in *Sunberg* held that "antiassignment" clauses such as 7 CFR § 770.6 (1983), which govern the transfer of Payment in Kind (PIK) certificates, are "intended to insulate the government as

---

**6.** The Court was unable to find 7 U.S.C. §§ 1444b–2, 1444b–3, or 1444b–4. It appears the correct authority cite should include 7 U.S. C. §§ 1445b–2, 1445b–3, and 1445b–4. The conclusions reached herein are not altered by this apparent citation error.

**7.** The parties may question why the Court has not discussed nor relied upon the exception for federal agencies provided in 7 CFR § 770.4(b)(2). The question of the applicability of the exception is not reached, however, since no congressional authority for the rule itself has been found.

**922**

benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties." *Id.* at 563. This Court finds no basis for concluding that the same congressional intent is not embodied in 7 CFR § 770.6 (1987).

 Debtors have not relied on the anti-assignment provision of 16 U.S.C. § 590h(g)[8] to defeat FmHA's secured interest in the commodity certificate. That statute provides:

> *A payment which may be made to a farmer under this section, may be assigned, without discount, by him in writing as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice.* Such assignment shall be signed by the farmer and witnessed by a member of the county committee or by an employee of such committee, except that where the assignee is a bank whose deposits are insured by the Federal Deposit Insurance Corporation, the Farmers Home Administration, or a production credit association supervised by the Farm Credit Administration, such assignment may be witnessed by a bonded officer of the lending institution. Such assignment shall be filed with the county committee. *Such assignment shall not be made to pay or secure any preexisting indebtedness.* This provision shall not authorize any suit against or impose any liability upon the Secretary or any disbursing agent if payment to the farmer is made without regard to the existence of any such assignment. The Secretary shall prescribe such regulations as he determines necessary to carry out the provisions of this section.

16 U.S.C. § 590h(g) (emphasis added).

The record indicates Debtors gave FmHA a promissory note for $25,180 on May 22, 1986 and were advanced that sum on the same day. A chattels and crops mortgage was executed September 26, 1985. It covered existing as well as future notes. Another chattels and crops mortgage was executed July 22, 1986.

Neither these documents nor the remainder of the record conclusively indicate whether the sum borrowed in 1986 was, in compliance with 16 U.S.C. § 590h(g), "used to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice" and not assigned to secure a preexisting debt. Consequently, the Court concludes FmHA has a perfected secured interest in the commodity certificate to the extent that the secured interest conforms with the requirements of 16 U.S.C. § 590h(g). To that extent, FmHA's interest should be recognized in Debtors' plan in compliance with 11 U.S.C. § 1225(a)(5).

### ORDER

Confirmation of the substituted plan of reorganization filed by Georgie W. Arnold and Laura J. Arnold, Debtors, is hereby denied. A judgment shall enter accordingly.

---

**8.** Section 1444e of U.S.C. Title 7, which governs the deficiency payment received by Debtors, incorporates 16 U.S.C. § 590h(g) by reference at subsection (k).