In re Edward Rogers HOLMAN, Rose Mary Holman, Debtors.

Bankruptcy No. 86–40959.

United States Bankruptcy Court, D. Kansas.

Jan. 22, 1987.

Joseph I. Wittman, Topeka, Kan., Trustee, pro se.

Charles R. Hay, and David E. Bruns, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for PCA.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the Court in this chapter 11 proceeding on the Request for Abandonment and Relief from the Automatic Stay filed by the Ninth District PCA (hereinafter "PCA") and a Brief in Response to such Request filed by the Trustee, Joseph I. Wittman (hereinafter "Trustee"). Specifically, this Court must determine the extent of a lien held by PCA to entitlements received by Edward Rogers Holman and Rose Mary Holman (hereinafter "the Debtors") pursuant to their participation in the Agricultural Stabilization and Conservation Service Program ("ASCS").

PCA is represented by Charles R. Hay and David E. Bruns of Goodell, Stratton, Edmonds and Palmer, and the Trustee proceeds on his own behalf.

The issues presented for determination are:

1. Whether the provisions of 16 U.S.C. § 590h(g) apply to a debtor's grant of a security interest in ASCS payments.

2. If § 590h(g) applies, to what extent all or any part of the credit extended by PCA constitutes an "antecedent debt".

Briefs have been submitted and the Court is ready to rule.

## FINDINGS OF FACT

1. On November 7, 1983, the Debtors and PCA executed a renewal promissory note (hereinafter the "Renewal Note") in the original principal amount of $189,-

404.00. Of that amount, $93,189.88 represents new consideration.

2. The Renewal Note was secured by a Security Agreement dated November 7, 1983, (hereinafter the "Security Agreement") granting PCA a security interest in the following collateral:

All the debtors' interest in all annual and perennial crops grown or growing or to be planted or produced, and all products of such crops specifically including but not limited to the following: Milo, wheat and alfalfa ... all additions, accessions, replacements, substitutions, proceeds and products therefrom including natural increase of livestock and any and all property of similar type or kind now owned or hereafter acquired by the Debtor and used for either personal, family or household purposes; farming or ranching operations; or any other business in which the Debtor is or might be engaged; all accounts, contract rights, collateral and general intangibles including all present and future rights; all warehouse receipts.

The security interest granted by this Security Agreement secured payment and performance of all obligations, indebtedness and liabilities of any kind, whenever and however incurred now existing or hereafter arising of the Debtor to PCA, as the secured party, including liabilities arising because of funds advanced at the option of PCA. The Security Agreement specifically provided that the Debtors granted a *present* security interest in the above-described collateral.

3. On January 8, 1985, Debtor filed a chapter 11 Bankruptcy Petition in the case of *In Re Edward Rogers Holman and Rose Mary Holman*, Case No. 85–40026.

4. On August 2, 1985, this Court entered a Cash Collateral Order which provided:

1. PCA shall transfer $20,000 from the cattle proceeds balance now held by the PCA to the debtor's cash collateral account for the debtors to draw upon for operating expenses.

2. Debtors shall grant to PCA a post-petition security agreement in growing crops including the crop to be planted in the fall of 1985 as a replacement lien upon the cash collateral proceeds.

5. In response to the Cash Collateral Order the Debtor signed a Security Agreement Extension Sheet on August 7, 1985 (hereinafter "Security Agreement Extension") which specifically included the following collateral: (1) all debtors' interest in the 1986 wheat crop, and (2) all proceeds arising out of the 1986 wheat crop, including all accounts, collateral, general intangibles, contract rights and specifically including all ASCS program payments.

6. In addition to the $20,000 transfer, PCA invested $33,450.12 in the 1986 wheat crop.

7. In May, 1986, Debtors signed the necessary documents entitling them to receive certain ASCS payments.

8. On May 15, 1986, the Debtors' chapter 11 Proceeding was dismissed by this Court.

9. PCA subsequently filed a suit against Debtors in the District Court of Lincoln County, Kansas, and on June 13, 1986, obtained a judgment for foreclosure and possession of all collateral. This judgment specifically includes any and all ASCS program payments and PIK Certificates as well as all proceeds, accounts, contract rights and general intangibles to be received by the Debtors.

10. On July 7, 1986, very shortly after state court judgment was entered in favor of PCA, the Debtors filed this Chapter 7 Proceeding.

11. Since the institution of this Chapter 7, the Trustee has received payments from ASCS and PIK certificates totalling approximately $11,000.

12. PCA filed a Request for Abandonment and Relief from the Automatic Stay with this Court to allow it to exercise all remedies it may have with regard to ASCS payments and certificates. The Trustee has responded by alleging that "the Debtors' assignment or attempt to give a security interest in the ASCS payments and PIK certificates is void or voidable pursuant to federal law."

## CONCLUSIONS OF LAW

The Trustee bases his response upon the language contained within 16 U.S.C. § 590h(g), which provides:

A payment which may be made to a farmer under this section may be assigned, without discount, by him in writing as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice.... Such assignment shall not be made to pay or secure any preexisting indebtedness.

■ The evident purpose of § 590h(g) is to make sure that the intended beneficiary of this federal program retains the benefit. See *Barlow v. Collins*, 397 U.S. 159, 162–65, 90 S.Ct. 832, 835–37, 25 L.Ed.2d 192 (1970). If there is no fresh consideration for the assignment, it is very possible that debtor, as beneficiary of the federal program, will not retain its benefits. Thus, the right to receive such government entitlements must not be assigned to secure a preexisting indebtedness. See *J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985).

In this instance, the Trustee asserts that the "assignment" made by the Debtors in the Security Agreement was given to secure preexisting indebtedness and is thus void or voidable under § 590h(g). In response, PCA asserts that § 590h(g) was intended to apply only to outright assignments rather than assignments given as security and is inapplicable to this case.

■ The plain language of § 590h(g) leads this Court to conclude that this section may indeed be applicable to assignments given as security. The section states that "a payment which may be made to a farmer ... may be assigned ... *as security* ... and that such assignment shall not be made to pay *or secure* any preexisting indebtedness." (emphasis added) This language contemplates two transactions: (1) an assignment to pay, which would constitute an outright assignment, or (2) an assignment to secure, which would constitute a collateral assignment or, in other words, the granting of a security

interest in such payments. This Court finds it unnecessary to reach a final conclusion regarding the meaning of "security interest" language contained in § 590h(g), however. Even if 16 U.S.C. § 590h(g) covers the granting of a security interest, it cannot be applied in this instance to invalidate the security interest granted as no "antecedent debt" or "preexisting indebtedness" is involved.

The type of "preexisting indebtedness" prohibited by § 590h(g) would arise in the following situation: on day one creditor extends a loan to debtor, which is unsecured. On day thirty debtor assigns to creditor its right to receive certain ASCS payments as security for the funds loaned on day one. This factual scenario is quite different from the facts at hand. The Debtors did *not* assign the ASCS payments and certificates to PCA on November 7, 1983 to secure indebtedness already owed to PCA. Rather, Debtors assigned the ASCS payments and certificates to secure repayment of a loan in the amount of $93,-189.88 being made contemporaneously. The Security Agreement memorializes a *present grant* by the Debtors of a security interest in certain collateral in exchange for the *present* loan of approximately $93,-000. That the ASCS payments were not yet in existence as of November 7, 1983, when the loan was made and the Security Agreement executed is not controlling and certainly does not render the debt incurred "preexisting indebtedness." Rather, the Debtors' granting of a security interest in the ASCS payments simply constitutes the granting of a security interest in "after-acquired property." K.S.A. 84-9-204(1).

Additionally, it is clear from the broad terms of the Security Agreement that the ASCS payments and certificates should be included. A number of courts have found that the terms "crops", "proceeds", "general intangibles" or "contract rights" are sufficient to grant a creditor a security interest in ASCS payments. See *In Re Mattick*, 45 B.R. 615, 617 (Bankr.Minn. 1985); *In Re Matter of Hollie*, 42 B.R. 111, 121 (Bankr.M.D.Ga.1984); *In Re Judkins*, 41 B.R. 369 (Bankr.M.D.Tenn.1984); *In Re*

872

*Cupp,* 38 B.R. 953, 955 (Bankr.N.D.Ohio 1984); *In Re Nivens,* 22 B.R. 287, 291–92 (Bankr.N.D.Tex.1982). This Court has held that PIK entitlements fall within the definition of "account" as a "right to payment." See *In Re Lions Farms, Inc.,* 54 B.R. 241 (Bankr.Kan.1985). PCA's Security Agreement and Security Agreement Extension cover "all accounts" of the Debtors and thus extend to the Debtors' ASCS payments.

 The Trustee also contends that the security interest created in the ASCS payments is voidable under § 590h(g) because the new money advanced in November, 1983 was not advanced in consideration for the 1986 ASCS payments at the time of the granting of the security interest. Evidently, the Trustee reads § 590h(g) as requiring that the cash or advances to be secured by the ASCS payments must be used to finance the making of "a crop" to which the ASCS payments *directly* relate.

The Court declines to adopt the Trustee's restrictive reading of § 590h(g). This section states that ASCS payments that *may* be made to a farmer *may* be collaterally assigned to secure a loan given to finance the "making of *a crop.*" (emphasis added) The drafter's use of the permissive terms "may" and the general identification of "a crop" is evidence of intent to include any and all ASCS payments that may be received by the farmer in the future, not just those payments to which the farmer presently has rights or which he is presently receiving, and any and all crops that the farmer might grow in the future, not just those crops which are to be grown or are growing in the year in which the loan is made.

The Court holds that the PCA has a lien on any ASCS payments received by the Trustee or to be received; provided, however, that PCA's lien against such payments shall not exceed the total sum of $146,640.00, which sum represents the $93,189.88 loan extended on November 7, 1983, and $53,450.12 expended by PCA in the 1986 wheat crop. The Court further holds that while 16 U.S.C. § 590h(g) may apply to the Debtors' grant of a security interest in ASCS payments, the section does not invalidate the Debtors' collateral assignment of such entitlements in this instance because no "preexisting debt" is involved. The Court further holds that § 590h(g) is not limited to assignments, whether collateral or outright, for ASCS payments which are received for the crop year in which the loan is given.

The Court notes that the Trustee has asserted his right to fees under 11 U.S.C. § 506(c) for maintaining and preserving estate property. The Court makes no finding with regard to the Trustee's assertion at this time, and will rule upon such matters only upon the Trustee's proper application for fees.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.