**In re Ralph BLACKERT, Debtor.**

**FEDERAL LAND BANK OF ST. LOUIS, a Federally Chartered Corp., Plaintiff–Appellant,**

v.

**STATE BANK OF ANNAWAN, an Illinois Banking Corp., Defendant–Appellee.**

No. 89–1113.

United States District Court, C.D. Illinois.

Jan. 4, 1990.

Douglas R. Lindstrom, Galesburg, Ill., for plaintiff-appellant.

Steven T. Hunter, Davenport, Iowa, for defendant-appellee.

## ORDER

MIHM, District Judge.

This case is an appeal from the order of the Bankruptcy Court in which Judge Altenberger ruled that Appellee was entitled to retain a 1986 government entitlement payment turned over to it by the Debtor. The basis for the Bankruptcy Court's holding was its finding that the Debtor had transferred all his interest in the 1986 payments to the Appellee under the Loan Modification Agreement and a written assignment. In other words, the Bankruptcy Court found that the Bank was not a creditor claiming security in the payments but was instead the outright owner of the right to those payments, 95 B.R. 972. For the reasons stated herein, the Bankruptcy Court's finding is reversed.

Over the course of 1986, the State Bank of Annawan ("Bank") made loans to Ralph Blackert for the purpose of financing his 1986 crops.

The loans were summarized by the Bankruptcy Court as follows:

| Date | Amount | Purpose | Security |
|------|--------|---------|----------|
| 3/12/86 | $40,069.24 | Crop expense | 1986 growing crops and crops in storage |
| 4/30/86 | $60,000.00 | Crop expense | 1986 growing crops and crops in storage; all payments from USDA, CCC, ASCS programs for 1986 and all subsequent years |
| 6/10/86 | $ 9,600.00 | Cash rent | Same as above |
| 6/10/86 | $13,300.00 | Crop expenses and operating capital | Same as above |
| 8/12/86 | $ 7,600.00 | Same as above | Same as above |

Prior to 1986, the Debtor had received various other loans from the Bank which remained unpaid. Thus, as of November 19, 1986, the Debtor owed the Bank for the five 1986 loans and nine other Notes, cumulatively totaling $378,849.39 plus interest. The Debtor was not able to repay these Notes.

On November 19, 1986 the Debtor and the Bank entered into a Loan Modification Agreement ("Agreement") in which the Blackerts and the Bank agreed:

Whereas, the Bank has, as security for Ralph Blackert's indebtedness under the Notes, a security interest in all of his farm machinery, livestock, 1986 growing and stored crops, and entitlement payments due by reason of his participation in the United States Department of Agriculture Feed Grain Program ("Program") for 1986; and

Whereas, the Bank and the Blackerts have agreed to the following to provide settlement of Ralph Blackert's obligations under the Notes and to lend money to the Blackerts to help the Blackerts remain in farming.

Now, therefore, in consideration of the mutual promises hereafter set forth, and for other good and valuable consideration, the Bank and the Blackerts agree that:

1. *Notes Repayment.* The Blackerts agree to repay the Notes as follows:

a. The Blackerts agree to sell or seal all their 1986 crops and livestock no later than as set out in Exhibit B. The Blackerts agree that as these crops are sealed or sold, they will promptly pay the proceeds to the Bank ("Proceeds").

b. The Blackerts agree to assign to the Bank their right to receive the final payment due by reason of the Blackerts' participation in the 1986

Program (commonly known as a deficiency payment).

c. The Blackerts agree to convey to the Bank all of their interest in certain real property being purchased by them.

d. The Blackerts agree to turn over to the Bank on November 19, 1986 all their machinery and equipment, except for that described on Exhibit E ("Farm Equipment"). If the Bank desires that the Blackerts aid the Bank in the liquidation and sale of this machinery and equipment, the Blackerts agree to cooperate with the Bank with respect to said sale.

e. Ralph Blackert agrees to execute a promissory note in favor of the Bank, in a form substantially identical to Exhibit F, in the principal amount of $45,000.00. This Note will:

(1) Be secured by a first security interest in the Farm Equipment;

(2) Accrue interest at the rate of 10 percent *per annum;* and

(3) Be repaid in ten equal annual installments of $7,323.75, each due on or before each consecutive 15th day of December, with the first payment being due December 15, 1987.

The Agreement also included provisions for a loan for the 1987 growing season (which was never made because of the intervening bankruptcy) as well as an arrangement for payment of the Blackert's expenses of bringing in the 1986 crops and maintaining their farm assets through the winter. In return for Blackert's performance, the Bank agreed to release them from their existing debt (except for the $45,000).

Pursuant to the terms of the Agreement, Blackert signed a Note and Security Agreement for $45,000, with the security listed as farm machinery and equipment. Blackert also signed an ASCS–36 form in which he assigned to the Bank "the payments due or to become due him" under the Agricultural Conservation Program. The amount assigned was not to exceed $378,-849.39.

The language on the ASCS–36 form indicated that the assignment was in consideration of "cash or other advances made or to be made to the producer with respect to such year to finance making a crop ... the assignment is not to pay or secure any pre-existing indebtedness." The form also stated that Department of Agriculture regulations governing assignments applied, as did the special provisions listed on the back of the form.

The Department of Agriculture regulations relating to assignment of payments under the conservation program are contained in 7 C.F.R. part 709. Section 709.1 states:

The purpose of this part is to state the conditions under which a producer may assign his payment under the agricultural Conservation Program ...

Section 709.3 provides:

(a) A payment which may be made to a producer under any program to which this part is applicable may be assigned *only as security* for cash or advances to finance making a crop ... for the current crop year. No assignment may be made to secure or pay any pre-existing indebtedness of any nature whatsoever. (emphasis added)

This regulation is consistent with the federal statute, 16 U.S.C. § 590h(g), which permits a farmer to assign payments as security for cash or advances to finance making a crop. The statute also prohibits assignment to pay or secure pre-existing indebtedness. *Id.*

The provisions on the back of the assignment form repeat the proper purposes for which payments may be assigned, repeat that assignment may be made for security only, explain the proper procedure for proper execution of the form, and provide that "payment under this assignment will be made to the lender, unless the county ASCS office is furnished proof that the indebtedness secured by this assignment has been paid or otherwise discharged."

On March 23, 1987, the Debtor filed a Chapter 12 proceeding in Bankruptcy. The schedules listed the Bank as a secured creditor for $45,000 with the 1986 deficien-

cy payment incorrectly listed as security for that debt. Although not all of the collateral to be liquidated under the Agreement had yet been liquidated, the rest of the debt to the Bank was not listed.

On April 14, 1987, $8,090.87 of the 1986 deficiency payment was received and deposited into a special account at the Bank pursuant to the assignment and Agreement. On May 8, 1987 the Debtor and the Bank filed a joint application in the Bankruptcy Court seeking payment to the Bank of $41,866.27 in deficiency payments and $9,224.64 held in the special account. Notice was sent to all creditors and no objections were filed. On June 22, 1987 the Debtor filed his Plan in which he agreed to repay the Bank $45,000.

On July 6, 1987 the Farm Credit Bank of St. Louis ("Land Bank"), also a creditor, objected to the Debtor's Plan. The Land Bank's objection centered around the amount which the Debtor owed the Bank and the security for that indebtedness. On July 13, 1987, the Debtor and the Bank filed a second joint application to pay the deficiency payments and the funds in the special account to the Bank. This time no notice was sent to the creditors. The Bankruptcy Court granted the second application which approved payment. On December 11, the Debtor's Plan was confirmed by the Bankruptcy Court, subject to future ruling on the Land Bank's objection.

To clarify the issues, the Land Bank sued the Bank, asking that the 1986 deficiency payment be paid to the trustee and that the court determine the extent of the Bank's lien on the Blackert's farm machinery and equipment. The Bankruptcy Court held a hearing after which it determined that the Bank was entitled to receive the deficiency payment and that it had a perfected security interest in the farm machinery and equipment. Subsequently, the Bankruptcy Court filed a written opinion setting forth the basis for its decision. This appeal concerns the portion of the Bankruptcy Court's decision that relates to the 1986 deficiency payment.

Bankruptcy Rule 8013 sets forth the applicable standard for review by this Court of decisions of the Bankruptcy Court as follows:

> On an appeal the District Court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

In his opinion Judge Altenberger stated that there were three issues. The first issue was whether the Bank was a creditor claiming a security interest in the deficiency payment or whether at some point in time it had acquired outright ownership of those payments. The second issue was whether the Bank, if it was a secured creditor, had perfected its security interest in the deficiency payments. The final issue was whether the court's approval of the second joint application to have the deficiency payments paid to the Bank was proper. Judge Altenberger stated that the primary issue was the first one since, if the Bank had acquired outright ownership, the other two issues were moot.

> On the first issue, the court found that: The Loan Modification Agreement evidenced a workout transaction whereby the Bank, which considered itself to be a secured creditor, took assets, including the deficiency payments, in partial satisfaction of the debt due it; the debtor retains certain machinery and equipment which was the security for the loans and executed a Note for $45,000 which represented the value of the machinery and equipment which the Debtor wished to retain; and the Bank agreed to advance the costs necessary to harvest the 1986 crop and make a 1987 production loan. From the point in time when the Loan Modification Agreement was executed and the assignment given, the Bank, as to the 1986 deficiency payments, was not a creditor claiming security in them, but the outright owner of the right to those payments.

The Bankruptcy Court based its opinion upon two factors. First, it examined the

intent of the parties. A bank officer testified that he went to the ASCS office to get an assignment form. The office explained to the bank officer that the ASCS–36 was the only form available to transfer deficiency payments. The Bankruptcy Court found that the mere fact that this form used language indicating that the assignment was for security purposes could not be controlling since the parties were limited to use of that form. Since the Bank already had a valid security interest, from the first assignment, Judge Altenberger felt that it was obvious that the Bank was attempting to achieve something more by executing the second assignment. Because the intent of the parties was undisputed, the Bankruptcy Court held that the Loan Modification Agreement effected an outright transfer of ownership.

The second factor examined by the Bankruptcy Court was whether the transfer was void because it was used to pay a pre-existing debt in contradiction to the statute and regulations. The Bankruptcy Court determined that the assignment to the Bank did not run afoul of that prohibition. Since the loans made by the Bank for the Debtor's 1986 crop were originally secured by the deficiency payments, the delay between the original giving of the security interest and the actual assignment of the payments did not make the assignment one for a pre-existing debt. The Bankruptcy Court held that the purpose of the assignment was to pay for the 1986 crop production loans and not for any previous years' loans.

In his discussion, Judge Altenberger did not consider the fact that the assignment given in connection with the Agreement was valid up to $378,849.39. That amount clearly includes the debt the Blackerts had prior to receiving the 1986 loans. The Loan Modification Agreement, as well as the assignment, makes no distinction between the loans given in 1986 and those pre-existing debts; rather, the Agreement consolidated those loans, treating them as one.

The policy underlying the prohibition on assignment for pre-existing debt resembles in a fundamental way a spendthrift clause.

The spendthrift aspect of the statute was briefly discussed by the Seventh Circuit in *J. Catton Farms v. First Nat. Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985). In that case, the Seventh Circuit stated that the purpose of prohibiting assignment for pre-existing indebtedness is to "make sure that the intended beneficiary of federal largess retains the benefit." *Id.* at 1246. This prohibition, if violated, prevents enforcement of an otherwise valid security interest. *In Re Holman*, 85 B.R. 869 (Bkrtcy.D.Kan.1988); *In Matter of Halls*, 79 B.R. 417 (Bkrtcy.S.D.Ia.1987).

In the case before the Court, the Agreement under which the challenged assignment was made incorporated loans for the 1986 crop year which had already been made as well as Notes evidencing previous years' debts. No new indebtedness resulted from the Agreement. Instead, already existing debt was restructured along with the underlying security for that debt.

The plain meaning of the term "pre-existing debt" clearly includes the debts from before 1986. In addition, in this case, it includes the loans already made for 1986, since the proceeds of those loans had already been paid to the Debtor and the security had already been determined. The mere fact that the Agreement included a provision for a new 1987 loan cannot cancel out the fact that the bulk of the Agreement was for pre-existing debt. In fact, in this particular case, the new loan was secured by a separate security interest in the equipment and machinery and, in fact, never came to fruition because of the intervening bankruptcy.

In addition, there is no discussion in the Bankruptcy Court's opinion of the limitation placed on assignment by both the statute and the regulation that assignment may be made for security only. The Court acknowledges that a statute allowing assignment for security purposes would necessarily allow the creditor holding that security to foreclose on the collateral. The result of such a foreclosure would indeed be outright ownership of the deficiency payment. Indeed, the Bankruptcy Court seemed to infer that the purpose of the

Loan Modification Agreement was such a foreclosure.

However, execution of an assignment of the payments as security results in the payments being made directly to the secured creditor, according to the provisions contained on the ASCS–36. There is thus no need for foreclosure on the collateral in the traditional sense. It is evident from the statute, the regulations, and the provisions on the reverse of the assignment form that there can be no outright transfer of ownership of the payments but only a transfer for a security purpose.

■ Because the Loan Modification Agreement and the assignment included a payoff of debts existing before the 1986 crop year, and because the intent of the parties to transfer outright cannot defeat the limitations on assignment imposed by the statute, the Bankruptcy Court's finding that the Bank was not a secured creditor but was instead the outright owner of the payments is clearly erroneous.

The Bankruptcy Court went on to discuss the other two issues. The Bankruptcy Court found that, had the Bank been a mere secured creditor, it had not properly perfected its security interest because the collateral described in the financing statement did not include the deficiency payment and because the assignment was improperly filed.

■ The Bankruptcy Court noted that, as between the Debtor and the Bank, there was no doubt that the rights and obligations between them were binding. However, the Uniform Commercial Code requires that any security interest be perfected in order to cut off rights of third parties. The Land Bank's first argument considered by the Bankruptcy Court was that the financing statement did not include the deficiency payments. After extensive analysis of the specific language, the UCC, and the nature of the deficiency payments themselves, the Bankruptcy Court correctly concluded that the financing statement did not include the deficiency payments. Rather than recounting the entire discussion, this Court merely adopts and affirms

the portion of the Bankruptcy Court's opinion making that finding.

The Bankruptcy Court also held that the rights of third parties were not cut off because the financing statement was not properly filed pursuant to the UCC. Once again, this Court agrees with the Bankruptcy Court and adopts that portion of its opinion.

■ The final issue has to do with the effect of the Bankruptcy Court's order granting the Debtor's and Bank's joint application to pay the deficiency payment to the Bank. Judge Altenberger correctly noted that the facts surrounding this order were confusing. The confusion began when the Debtor filed its Bankruptcy Petition and incorrectly described his debts to the Bank. Further confusion resulted when the Debtor and the Bank filed the joint application in which they stated that the Debtor was obligated to the Bank and that the Bank held collateral in the 1986 deficiency payment. Further compounding the confusion is the second application by the Debtor and the Bank for payment of the deficiency funds, which was granted without notice to creditors. The second application was slightly different from the first in that, rather than describing the deficiency payments as cash collateral, it states that the Debtor has no equitable interest in the account or the deficiency payment and states that the trustee agrees that the payments are not property of the estate. The Bankruptcy Court noted that difference but held that the second application and the court's subsequent order had no legal impact on the bankruptcy proceeding because notice should have gone out to the creditors. Thus, the Bankruptcy Court found that its previous order was not a bar to the Land Bank's objections to the "secured position" of the Bank. This Court agrees and affirms that part of the Bankruptcy Court's opinion.

However, the Bankruptcy Court considered its decision on the latter two issues to be mere dicta since it had originally ruled that the Bank was the outright owner of the payments rather than a secured creditor. Because this Court has now re-

versed the Bankruptcy Court on that issue, this matter is remanded to the Bankruptcy Court for proceedings in compliance with this order.